# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVILLE TOWNSHIP BOARD OF EDUCATION,<br><br>**Plaintiff,**<br><br>v.<br><br>ZURICH AMERICAN INSURANCE CO.,<br><br>**Defendant.** | Civ. No. 16-4466 (KM) (MAH)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.

Before the court is the motion of Montville Township Board of Education ("Montville") for reconsideration of my prior Opinion ("Op.", ECF no. 22) and Order (ECF no. 23). In that Opinion, I held that Montville's insurer, Zurich American Insurance Co. ("Zurich"), did not have a duty under the GCL Coverage Part of the policy to defend Montville against state-court claims brought against it by Child M. Child M alleges that Montville, while it employed Jason Fennes as a teacher for twelve years, knew about abusive acts by Fennes, failed to notify the authorities, and agreed not to tell potential future employers about that conduct in order to induce Fennes to resign. In 2010, Fennes did resign, and went on to a position at Cedar Hill Prep, where he sexually abused a number of students. He was later criminally charged for acts of sexual abuse. Montville's silence, Child M claims, enabled and facilitated Fennes's abuse of her at Cedar Hill.

Montville sought a declaratory judgment by order to show cause, and has contended throughout that Zurich is obligated to defend it against Child M's allegations under the GCL Coverage Part of its general commercial liability ("GCL") policy. Zurich has declined to do so, based on, *inter alia*, the GCL

1

Coverage Part's exclusion of claims "arising from" or "relating in any way" to "abusive acts."

Taking the claims as presented by Montville, I considered whether Zurich's duty to defend under the GCL Coverage Part was vitiated by the abusive acts exclusion. The scope of the duty to defend, I held, is determined by the nature of the allegations against the insured—*i.e.*, the *kind* of claim being made. To simplify a bit, if the plaintiff does not allege a covered risk, the insurer has no duty to defend against the allegation. Montville's insistence that it was not actually guilty of any wrongdoing with respect to the abuse of students, I wrote, did not alter the nature of the claims being asserted, or the issue of whether the risk fell within the coverage of the GCL Coverage Part.

To some degree, Montville seems to request that I reconsider my disposition of the issues under the GCL Coverage Part. I discuss that contention in Section II.B.1, *infra*, but reject it.

Primarily, however, Montville has switched its approach. Now it argues that it is entitled to defense costs (and presumably coverage) under a different part of the policy: the Abusive Acts ("AA") Coverage Part. Without really acknowledging the switch, Montville objects in substance that the bulk of the discussion in the prior Opinion is inapplicable to the AA Coverage Part. And no wonder—that was not the issue that Montville's papers, fairly read, presented to the Court.

The issue now before the Court is whether Montville's new position is cognizable on reconsideration. Citing a brief reference in its Reply and Opposition brief, and a head-scratching footnote in my Opinion where I attempted to make sense of that reference, Montville insists that—or rather, blusteringly acts as if—the AA Coverage Part issue has been in the case all along. Indeed, Montville's counsel appears to be trying to convince the author of the Opinion that his Opinion (which devoted a few sentences of a footnote to

a version of the issue) "*focused* on the 'prior known acts' exclusion of the 'AA Coverage Part.'" ((Reconsideration Br. 7, ECF no. 31; emphasis added)

Still, I would not lightly deny an insured, and particularly a school district, the benefit of its insurance policy because its counsel's tactics were ill-considered, or even because I thought counsel had wasted the time and resources of its adversary and the Court. I will analyze the motion to reconsider, as it bears on the AA Coverage Part, in Section II.B.2, *infra.*

## I. **Standard on Motion for Reconsideration**

The standards governing a motion for reconsideration are well settled. *See generally* D.N.J. Loc. Civ. R. 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); Carmichael v. Everson, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004). Local Rule 7.1(i) requires such a motion to specifically identify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *Id.*; *see also Egloff v. New Jersey Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Evidence or arguments that were available at the time of the original decision will not support a motion for reconsideration. *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 636 (D.N.J. 1997); *see also North River Ins. Co.*, 52 F.3d at 1218; *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 2010 WL 5418972, at *4 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

## II. **Discussion**

For ease of reference, I repeat here my summary of the pertinent allegations of Child M's state-court complaint:

- Prior to working at Cedar Hill, Montville employed Fennes as a teacher and track coach at William Mason Elementary School. During the 12 years he worked at Montville, Fennes sexually abused minor students. (Compl. p. 11)

- Montville knew about, or was on notice of, such sexual abuse. Montville nevertheless failed to report Fennes to the appropriate authorities as required by law. (*Id.*)

- Montville entered into an agreement, dated May 4, 2010, with Fennes, in which Montville agreed to "limit the scope of information" it would communicate to potential employers "in exchange for" his resignation. (*Id.* at 12)

- Fennes "performed various acts of sexual molestation against" Child M (*Id.* at 5)

- But for Montville's failure to report and "provide pertinent and highly relevant information" about Fennes to potential employers, such as Cedar Hills, Child M would not have been sexually abused by Fennes. (*Id.* at 12-15)

(Op. 2–3)

In that action, Montville prevailed on a motion for summary judgment. That judgment, however, was for the most part reversed by the Appellate Division. *Child M. v. Fennes*, Docket No. A-0873-15T2, 2016 WL 4473253, 2016 N.J. Super. Unpub. LEXIS 1955, *2-*8 (App. Div. Aug. 25, 2016). My Opinion quoted at length from the Appellate Division's opinion. (Op. 6–10) (Montville's objection to my having done so is discussed at Section II.B.1, *infra.*)

### A. Correction of Date, New Evidence

Before proceeding to the substance, I briefly consider two discrete subsidiary issues raised by the reconsideration motion.

#### 1. Date correction

In the introductory paragraph of the Opinion, I wrote that that "*In 2012,* one of Fennes's alleged victims, Child M, a Cedar Hills student, sued (among

4

others) Montville." (Op. 1; emphasis added) That sentence inaccurately telescopes the events. The original 2012 state-court complaint named only Fennes and Cedar Hill; Montville was added by amendment later, in 2015.

Montville makes much of what was clearly a slip of the pen; I did not misapprehend the facts. Two pages later, in the formal statement of facts, I described the procedural history accurately:

> In August 2012, Child M and her parents sued Fennes and Cedar Hill. On January 23, 2015, Child M filed a third amended complaint that named Fennes, Cedar Hill, Montville, and others as defendants.

(Op. 3)

The misstatement on page 1 had no effect on the Court's decision. Nevertheless, accuracy is important. Reconsideration is granted to the extent that I will order that the sentence on page 1 of the Opinion be amended to delet "In 2012," and to read in its amended form as follows: "One of Fennes's alleged victims, Child M, a Cedar Hills student, sued (among others) Montville."

### 2. New evidence

Montville proffers a document, dating from 2010 but "new" in the sense that it was obtained by Montville after I had filed my Opinion. (ECF no. 25, sealed) Because Montville represents that it did not possess the document, there is at least an argument that it could not have been expected to bring it to the Court's attention before. Zurich, however, disputes that this document was previously unavailable to Montville.

Because the document is sealed, I will not describe it in detail here. Suffice it to say that it reports the results of an investigation, concluded shortly before Fennes resigned. This document, says Montville, constitutes evidence that it did not have prior knowledge of abusive acts by Fennes. Even if I accepted Montville's contention at face value, however, this new evidence would not alter the basis for my prior decision.

First, the sealed document does not change the nature of Child M's allegations or the scope of the duty to defend under the GCL Coverage Part. At best, it would seem to be a counterweight to the evidence of Montville's liability. The fact remains that Child M's *claims* arise from and relate to acts of abuse, as established in my prior Opinion, and that Montville has not established that these are covered risks under the GCL Coverage Part.

Second, much of the substance of this document was described in the passage from the Appellate Division Opinion quoted in my Opinion. Possession of the document itself would only have incrementally supplemented what the Court considered in connection with the prior Opinion.

Reconsideration will therefore be denied to the extent it is based on this "new evidence."

### B. Duty to Defend Under GCL and AA Coverage Parts

I proceed to the heart of Montville's motion. It is important to distinguish between two portions of the Zurich policy. I refer to (1) the GCL Coverage Part, which contains an exclusion for "abusive acts," and (2) the AA Coverage Part, which contains an exclusion for "prior known acts." Although Montville now focuses on (2), I must first discuss (1) for context.

#### 1. GCL Coverage Part, with Abusive Act Exclusion.

Montville, throughout the state and federal proceedings, has rested its case on the "GCL Coverage Part" of its General Commercial Liability policy with Zurich. This part broadly provides insurance for "bodily injury" caused by an "occurrence." As discussed in far more detail in my Opinion (Op. 14–15), this part excludes any claim for bodily injury "arising out of or relating in any way to an 'abusive act'" or "any loss, cost or expense arising out of or relating in any way to an 'abusive act.'" The definition of an abusive act (quoted at Op. 4–5) would reasonably encompass sexual abuse of a young child, but is much broader than that.

The question for the court—which was considering *only* the applicability of the abusive acts exclusion from the GCL Coverage Part—was this: Does the Child M state court litigation against Montville assert claims "arising out of or relating in any way to an 'abusive act'"? I answered that question in the affirmative, discussing it at length and citing applicable law. I found that the *claimed* liability of Montville, though indirect, arose from or related to acts of sexual abuse. The abusive acts exclusion from the GCL Coverage Part liability therefore applied. (Op. 14–21)

Montville objects strenuously that it did not know about any acts of sexual abuse by Fennes while they were happening, whether during or (especially) after his employment in Montville. That may be the foundation of a defense. As to the GCL Coverage Part's exclusion of Abusive Acts, however, Montville's knowledge is not especially relevant. It is the nature of the claim, not the insured's culpable mental state, that determines whether the claim implicates a covered risk. Montville's claimed lack of knowledge or culpability does not alter the nature of the claims, which arise from and relate in any way to sexual abuse of a minor. (*See* summary of Child M's claims in state court complaint at p. 3, *supra*.)[1]

Montville objects in particular to the Court's lengthy quotation from the opinion of the New Jersey Superior Court, Appellate Division, in *Child M. v. Fennes*, Docket No. A-0873-15T2, 2016 WL 4473253, 2016 N.J. Super. Unpub. LEXIS 1955, *2-8 (App. Div. Aug. 25, 2016). That court found that a reasonable jury could conclude from the evidence that Montville covered up abusive acts of which it knew or had reason to know.

My citation of the Appellate Division opinion did not, as Montville urges, constitute an invalid finding of fact that it knowingly covered up the abuse. Indeed, the Appellate Division's opinion itself did not constitute such a finding;

---

[1] The AA Coverage Part, with its Prior Known Acts exclusion, is discussed in Section II.B.2, *infra*.

7

reviewing a grant of summary judgment, that court found only that the evidence, interpreted in the light most favorable to Child M, would permit a jury to make certain findings.[2]

I cited the Appellate Division case because it clarifies the *nature of the allegations* being asserted in Child M's state court litigation against Montville. Indeed, and *a fortiori*, it imposes the additional condition that Child M's allegations have some evidentiary support.

"The duty to defend comes into being when the complaint states *a claim* constituting a risk insured against." (Op. 13-14) (emphasis added; citing *Voorhees v. Preferred Mut. Ins. Co*, 128 N.J. 165, 173-74 (1992)). The duty to defend is triggered by a claim which, *if* sustained, would require the insurer to indemnify the insured. This claim—that Montville knew about and covered up abuse—may not be sustained. Montville says the claim will fail, and offers evidence to that effect. But even if the claim were sustained, it would not set

---

[2] Among those potential findings were

(a) "[A]s of 2005, Montville knew that Fennes was engaged in inappropriate physical contact with female students. Among other things, Fennes had female students sit on his lap; allowed them to touch his legs, thighs and buttocks; kissed them and allowed them to kiss him; threatened them not to tell anyone; and told them they would get into trouble or he would not like them anymore or hold their hands if they told anyone."

(b) Admonished by the administration, Fennes defiantly responded that he was an "affectionate person" and "was not going to stop cold turkey.

(c) Three complaints were made to the New Jersey Department of Children and Families, Division of Youth and Family Services, and that complaints from parents continued, including one of Fennes patting a student on the buttocks and hugging her.

(d) The principal warned Fennes in September 2008 that it was unacceptable to have physical contact with students, but eight months later saw three female students sitting in his lap.

(Op. 7-10 (quoting App. Div. Opinion)). The Appellate Division went on to relate that the district failed to follow up adequately, and agreed in connection with Fennes's resignation that it would disclose nothing to future employers except the positions he held and his dates of employment. (*Id.*)

8

forth a covered risk under the GCL Coverage Part, so Zurich does not have a duty to defend under that Coverage Part.

> A distinction is drawn between a groundless action and one, which measured by the pleadings, even if successful, would not be within the policy coverage. . . .
>
> In 45 C.J.S., Insurance, s 933, p. 1056, the rule appears as follows:
>
>> 'The duty to defend should be determined from the language of the insurance contract and from the allegations in the petition or complaint in the action brought by the one injured or damaged against insured, and the insurer's denial of liability and refusal to defend after investigating the facts must be disregarded. The obligation to defend is to be determined when the action is brought, and not by the outcome of the action.'

*Danek v. Hommer*, 28 N.J. Super. 68, 77, 100 A.2d 198, 202–03 (App. Div. 1953), *aff'd*, 15 N.J. 573, 105 A.2d 677 (1954).

Counsel point to one exception to, or refinement of, this principle. The duty to defend is not necessarily frozen by the complaint. The duty to defend may arise where facts extrinsic to the complaint in effect expand the claim, bringing the claim within the policy's coverage. *See Abouzaid v. Mansard Gardens Assocs., LLC*, 207 N.J. 67, 86 (2011) (where no covered claim appeared on face of complaint, but interrogatories revealed basis for covered claim, duty to defend was triggered); *SL Indus. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 198 (1992) (even where complaint appears to allege no covered claim, plaintiff's later interrogatory responses may trigger duty to defend).

That exception is to be distinguished, however, from the defendant insured's simply saying that it will prevail on the merits and thereby negate some exclusion or limitation on coverage. That does not change the nature of the claims being asserted. *See P.D. v. Germantown Ins. Co.*, 2015 N.J. Super. Unpub. LEXIS 1731, at *14-15 (App. Div. July 20, 2015). *State Farm Fire & Cas. Co. v. Gregory*, 2012 WL 2051960, 2012 N.J. Super. Unpub. LEXIS 1301, at *6 (App. Div. June 8, 2012).

9

Looking forward from the duty to defend to the coverage/indemnity phase, I add one caveat. As of now, Montville has not established that these claims involve a covered risk under the GCL Coverage Part. It might come about, however, based on events in the case and development of the record, that they are. Should Montville be found liable, the issue may be revisited.

### 2. AA Coverage Part

A second provision, an endorsement that the parties have deemed the Abusive Act ("AA") Coverage Part, to some degree fills the gap left by the abusive acts exclusion. For a premium, the AA Coverage Part insures against "loss because of 'injury' resulting from an 'abusive act.'" The definitions of "abusive act" for purposes of the CGL Coverage Part and the AA Coverage Part are substantively similar.[3]

The AA Coverage Part, however, contains an exclusion of its own, deemed the "Prior Known Acts" exclusion. There is no coverage under the AA Coverage Part for "any claim or 'suit' based upon, arising out of or attributable, in whole or in part, to any 'abusive act' of which any insured, other than the insured

---

[3] The AA Coverage Part, however (because it grants, rather than excludes, coverage) would require that the abuse or molestation result in injury. With that caveat, the policy's definition of an abusive act is as follows:

An "abusive act" means:

any act or series of acts of actual or threatened abuse or molestation done to any person, including any act or series of acts of actual or threatened sexual abuse or molestation done to any person by anyone who causes or attempts to cause the person to engage in a sexual act:

a.  Without the consent of or by threatening the person, placing the person in fear or asserting undue influence over the person;

b.  If that person is incapable of appraising the nature of the conduct or is physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; or

c.  By engaging in or attempting to engage in lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of any person.

(Def. SUMF ¶ 16; Pl. Resp. SUMF ¶ 16)

10

actually committing the 'abusive act', has knowledge prior to the effective date[4] of this Coverage Part." (Def. SUMF ¶¶ 18-20, quoting Policy § I.1.a., I.2.d., U-GL-1275-A CW (04/2006); Pl. Resp. SUMF ¶¶ 18-20; Policy § V.1, U-GL-1275-A CW (04/2006)

For purposes of reconsideration, it is important to consider the following question: Did my prior Opinion, in deciding the GCL Coverage Part issue, "overlook" an AA Coverage Part issue presented by Montville? Ultimately, I answer that question in the negative.

My Opinion was devoted to the issue of the GCL Coverage Part, because that was the issue presented by Montville. Montville relied all along on the GCL Part, not the AA Part. Now it is true that the Verified Complaint for declaratory judgment (ECF no. 1-1 at 20) included a citation to the AA Coverage Part. With the Verified Complaint, however, Montville filed an order to show cause, seeking declaratory relief. In its brief in support of the order to show cause, Montville placed no reliance on the AA Coverage Part, and all but conceded that the AA Coverage Part was inapplicable. The discussion in that brief was devoted to the GCL Coverage Part. And the final point of the Brief was entitled "E. The Fact That the Additional Zurich Abusive Act [AA] Coverage May Not Apply is Irrelevant." (OSC Br. p. 15, ECF no. 1-1)

After the case was removed to this Court, Montville filed its motion for summary judgment. Again, its Brief in support (ECF no. 14-3) relied solely on the GCL Coverage Part and the alleged inapplicability of the associated abusive acts exclusion. Once again, Montville virtually conceded that the AA Coverage Part did not apply, and disclaimed reliance on that part. The final point of Montville's summary judgment brief was entitled "F. The Fact That The Additional Zurich Abusive Act Coverage May Not Apply is Irrelevant." (Montville SJ Brief p. 21, ECF no. 14-3 at 26) The text of that point, set out in the

---

[4] The relevant "effective date," the parties seem to agree, would be July 1, 2011. The abuse of Child M is alleged to have taken place in 2012, during the 2011–12 renewed term of the policy.

11

margin,[5] confirms that Montville was not pressing the issue of the AA Coverage Part.

Zurich understandably responded to Montville's summary judgment motion on the basis of the GCL Coverage Part. It simultaneously cross-moved for summary judgment in its own favor on the same basis. (ECF no. 17)

Only thereafter, in its Reply Brief and Opposition, did Montville drop in a short reference to the AA Coverage Part as an alternative argument. (Reply Br. 11–12, ECF no. 20 at 15–16)[6] My Opinion briefly addressed that alternative argument in a footnote. I reproduce that footnote in full in the margin.[7]

---

[5] Here is Point F of Montville's summary judgment brief, in its entirety:

**F. The Fact That The Additional Zurich Abusive Act Coverage May Not Apply is Irrelevant**

Zurich also disclaimed under the Abusive Act Coverage to the extent that Jason Fennes was not its employee and Child M was not its student. Additionally, Zurich refused coverage under the Abusive Act Coverage by alleging the Board was aware of prior claims or litigation involving Fennes and had prior knowledge of abusive acts See Edelstein Cert., Ex. E at pp. 12–14. While such information may be a basis for denying coverage under the Abusive Act Coverage, coverage still applies under the previously discussed sections of the Zurich policy [*i.e.*, the GCL Coverage Part].

For these reasons, the blanket exclusion for sexual abuse does not apply. While not every claim may be covered, there are claims such as emotional distress, which if proven, would be a covered claim under the Zurich policy. It is beyond dispute that coverage is warranted based on the entirety of the Zurich Policy and the claims for which coverage is sought. As such, the Board is entitled to summary judgment as a matter of law.

(Montville SJ Brief p. 21, ECF no. 14-3 at 26)

[6] Here is the relevant passage from the Reply Brief, in its entirety:

In the event that this Court determines that there is a substantial nexus between the Board's actions and Fennes' acts (which the Board does not admit), the Board purchased an endorsement to the Policy entitled "Abusive Act Liability Coverage, Form" specifically for the purpose of covering the type of claim at issue in this case. See Edelstein Cert. Ex. C at Abusive Act Liability Coverage Form; Ex. A at ¶ 20. The Abusive Act Liability Coverage Form states that Zurich will provide coverage for abusive acts. See Edelstein Cert. Ex. C at Abusive Act Liability Coverage Form. Zurich's disclaimer, based not only on the underlying CGL Policy,

12

but also on the endorsement to the Policy, is not only wrong, but flies in the face of the Board's reasonable expectations as an insured. It is undisputed that the blanket exclusion for abusive acts was modified by the endorsement. The purpose of the endorsement is to provide coverage for abusive acts. None of the exclusions contained in the endorsement apply to the Board. Zurich cannot have it both ways. First it claims that they do not cover abusive acts and that Fennes' abusive act should be imputed to the Board to deny coverage. This is wrong. The Board's alleged negligent acts are separate and apart from Fennes' abuse of Child M when she was a student at Cedar Hill. Next, Zurich argues that (although it was willing to take the Board's money for an endorsement to the Policy that covers abusive acts) the claims against the Board should not be covered because of an exclusion in the endorsement. That exclusion only operates to prevent coverage if the Board participated in the abusive act. The Board did not "participate" in the abusive act – it happened years later when Fennes was employed by a different school. The Board did not participate, direct or allow the abuse by Fennes. Zurich cannot twist the facts to fit them under an exclusion in order to disclaim coverage. The Board purchased an endorsement to cover claims for abusive acts exactly like the claims in this case. As such, there is no reasonable interpretation of the Policy that operates to prevent coverage, and Zurich should be ordered to defend the Board.

(Reply Br. 11–12, ECF no. 20)

7   That footnote (Op. 13 n.9) reads, in its entirety, as follows:

This [abusive acts] exclusion, cited above, is contained in the GCL Coverage Part, which does not really seem to be designed to cover sexual abuse at all. A question arises as to why Montville is attempting to shoehorn its claim into the GCL Coverage Part. After all, Montville purchased abusive-acts coverage separately in the AA Coverage Part. And it concedes that it purchased that AA coverage because the abusive-act exclusion in the CGL Coverage Part is essentially a "blanket exclusion." (Pl. Reply Br. 12)

The explanation would seem to lie in the "prior known acts" exclusion of the AA Coverage Part. Montville cannot avail itself of the AA coverage it purchased, because Zurich did not agree to insure Montville for abusive acts it knew about *before* the effective date of the policy, *i.e.*, July 1, 2011. And Montville's prior knowledge is the very essence of Child M's claim against it.

When Montville originally filed this coverage action in New Jersey Superior Court, it relied solely on the GCL Coverage Part. (ECF No. 1, Ex. A) It did the same in its motion for summary judgment in this Court. Now, in response to Zurich's cross-motion for summary judgment, Montville makes a terse claim of coverage under the AA Coverage Part. (Pl. Reply Br. 11-12) That contention lacks merit.

Without citation, Montville states that the "prior known acts" exclusion applies only to abusive acts which it actually committed or participated in. (*Id.*) There is no such limitation in the language of the exclusion, however. The exclusion broadly applies to "*any* claim or 'suit' based upon, arising out of or

13

Now, in its reconsideration motion, Montville barely mentions the GCL Coverage Part, and has stacked its chips on the AA Coverage Part.[8] Rather than explain the switch, it seems to imply that it was relying on the AA Coverage Part all along. According to Montville, the Court erred in "holding that the Prior Known Acts exclusion applies to bar coverage under the abusive act [AA] coverage part." (Reconsideration Reply Br. 2, ECF no. 31) In a section entitled "The Court's Key Determination" Montville states that the Court "*focused* on the 'prior known acts' exclusion of the 'AA Coverage Part.'" (Reconsideration Motion Br. 7, ECF no. 24-1 at 7; emphasis added)

That footnote has yielded more to Montville's reading than I can find there. My Opinion did not "focus" on the Prior Known Acts exclusion, or even the AA Coverage Part, because Montville itself had not focused on it. The footnote, quoted *supra,* addressed the brief reference to the AA Coverage Part in Montville's Reply and Opposition. In that footnote, I expressed puzzlement as to why Montville had relied on the GCL Coverage Part to the virtual exclusion of the AA Coverage Part, which expressly covers acts of abuse. The "explanation," I speculated—*i.e.,* the explanation *for Montville's position*—"would seem to lie in the 'prior known acts' exclusion of the AA Coverage Part." (*See* Op. 13 n.9) That explanation, of course, was taken directly from *Montville's own statements in its briefs* that allegations of its prior knowledge of abuse "may be a basis for denying coverage under the Abusive Act Coverage," a concession that was

---

attributable, in whole or part, to *any* 'abusive act' of which any insured . . . has knowledge prior to the effective date of this Coverage Part." (Def. SUMF ¶ 20; Pl. Resp. SUMF ¶ 20, quoting Policy § I.2.d, U-GL-1275-A CW (04/2006)) (emphasis added)). I therefore find that Zurich did not wrongfully disclaim under the AA Coverage Part.

[8] I am still uncertain of the answer to the question I posed in the footnote: why Montville previously confined itself to the GCL Coverage Part, which excludes abusive acts, and eschewed the AA Coverage Part, which covers them. I raise it because it is relevant to an issue that arises on any reconsideration motion: whether the party seeking reconsideration has a good reason for having failed to raise an argument before. On that point, Montville offers nothing. It is possible that Montville was simply trying to put as much daylight as possible between itself and any allegation of abuse. Now, facing denial of defense costs, Montville seems to be willing to accept coverage and defense under the AA Coverage Part.

accompanied by an immediate pivot back to the GCL Coverage part. (*See* n.5, *supra.*)

Nor did Montville's short discussion in the Reply and Opposition make a straightforward argument that the Prior Known Facts exemption did not apply because Montville lacked prior knowledge. Rather, Montville made a different argument, one that did not, strictly speaking, involve prior knowledge as such. No exclusion from the AA Coverage Part would apply, it said, because such an exclusion "only operates to prevent coverage if the Board participated in the abusive act." (The Reply Brief passage is quoted at n.5, above.) That—the argument that Montville actually made with respect to the AA Coverage Part—is the argument I addressed in the footnote.

The Prior Known Acts exclusion negates coverage under the AA Coverage Part for "*any* claim or 'suit' based upon, arising out of or attributable, in whole or in part, to *any* 'abusive act' of which any insured, other than the insured actually committing the 'abusive act', *has knowledge* prior to the effective date of this Coverage Part." (Policy § I. 2.d., U-GL-1275-A CW (04/2006) (emphasis added). Thus, I stated in the footnote, Zurich did not wrongfully disclaim AA Coverage Part defense and coverage based on Montville's "non-participation" argument. And frankly even that argument—which is distinct from the "lack of prior knowledge" argument Montville is making now—was undeveloped and sketchily explained.

So set aside Montville's position that the Court somehow overlooked its previously-presented argument that its defense costs are recoverable under the AA Coverage Part and are not excluded by the AA Part's Prior Known Acts exclusion because Montville had no such prior knowledge. I nevertheless consider other grounds for reconsideration.

There has been no intervening change in the law, and the proffered new evidence, as stated above, does nothing to undermine the Court's reasoning. That leaves reconsideration when necessary to correct a clear error of law or to

prevent manifest injustice. *See* Section I, *supra*, and cases cited. Assessment of that issue requires the Court to consider Montville's belated contentions to some degree.

Ordinarily, I might simply do so, employing a summary judgment standard. That would be manifestly unfair to Zurich, from a procedural point of view. At best, Montville offers a fig-leaf argument that it cited the AA Coverage Part in its Complaint and in its Reply Brief/Opposition on summary judgment. That is something, but it is not much. Zurich was not placed on fair notice that it would have to respond to such arguments. Even assuming that these arguments were asserted in some form, by placing them in a Reply and Opposition to Cross-Motion, Montville's counsel ensured that Zurich would not have the opportunity to respond in the ordinary course. *See* Loc. Civ. R. 7.1(h) ("No reply brief in support of the cross-motion shall be served and filed without leave of the assigned district or magistrate judge.")

The alternative that makes the most sense is this. I will treat the prior decision as a partial grant of summary judgment on the issue of the duty to defend under the GCL Coverage Part. I will grant the motion for reconsideration in the narrowest sense—*i.e.*, I will consider (I do not say "reconsider") the question of Zurich's duty to defend under the AA Coverage Part. If Zurich contests that issue, it may file a succinct, second motion for partial summary judgment. That motion and any opposition may cite exhibits previously filed, and counsel need not resubmit them. Counsel are directed to confer within 5 days and submit a letter proposing an agreed schedule for motion papers, responses, and reply briefs. If there is a cross-motion, it shall take the form of a simple mirror-image notice of motion; it shall not be the occasion for a separate round of briefing. Counsel should not anticipate that any request for a surreply will be granted.

## III. CONCLUSION

For the foregoing reasons, Montville's motion for reconsideration is granted to the following extent. The court will consider Zurich's duty to defend under the AA Coverage Part. Zurich, assuming it contests that issue, shall file a motion for summary judgment on a schedule to be agreed by the parties, as outlined above. The motion is otherwise DENIED.

Dated: January 19, 2018

**KEVIN MCNULTY**
**United States District Judge**