UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVILLE TOWNSHIP BOARD OF EDUCATION,<br><br>Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE CO.,<br><br>Defendant. | No. 2:16-cv-4466-KM-MAH<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Now before the court are cross-motions for summary judgment by Montville Township Board of Education ("Montville") and its insurer, Zurich American Insurance Co. ("Zurich"). Montville has been sued in state court by Child M. Child M alleges that Montville employed Jason Fennes for twelve years, knew about sexual misconduct by Fennes, failed to notify authorities, and agreed not to tell potential future employers about that conduct to induce Fennes to resign. After he resigned from Montville in 2010, Fennes began working for Cedar Hill Prep, where he allegedly sexually molested several students, including Child M. Child M claims that Montville's silence enabled and facilitated Fennes's abuse of her at Cedar Hill Prep.

Montville initially argued that Zurich was obligated to defend it against Child M's allegations under its General Commercial Liability ("GCL") policy. Zurich declined because the GCL policy excludes coverage of claims "arising from" or "relating in any way" to "abusive acts." In a

1

prior opinion, I found that Zurich did not have a duty to defend Montville under the GCL policy. (ECF No. 22). Montville moved for reconsideration, which I denied. (ECF No. 37).

Montville's motion for reconsideration also asserted, for the first time, the argument that Zurich had a duty to defend under the Abusive Acts ("AA") provision of their policy. Montville insists that this provision has been in issue throughout the litigation, despite its previous statements to the contrary. I was reluctant to permit a school district to sacrifice rightful coverage based on a possible strategic misstep, but equally reluctant to decide an issue as to which Zurich had not been given a fair opportunity to respond. I therefore authorized Montville to file a new motion asserting that Zurich has a duty to defend it under the AA policy. (ECF No. 37). Zurich's duty to defend under the AA policy is thus addressed in these cross-motions for the first time.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254, 259 (D.N.J. 1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left to the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotations and citations omitted). Nonetheless, when material

underlying facts are not in dispute, summary judgment is appropriate to dispose of insurance-coverage questions. *McMillan v. State Mut. Life Assur. Co.*, 922 F.2d 1073, 1074 (3d Cir. 1990).

## II. DISCUSSION

Zurich does not have a duty to defend Montville from Child M's claims under the AA policy. The Prior Known Acts exclusion to the AA policy denies coverage for claims arising from "abusive acts" when the insured knew about the "abusive acts" prior to the policy's effective date.[1] Child M's complaint sufficiently alleges that Montville knew that Fennes had engaged in "abusive acts" during his tenure at Montville. Montville's liability is alleged to arise from, or to be attributable to, in whole or in part, its knowledge of those earlier abusive acts. Allegations, of course, are not proof, but in general the duty to defend is triggered by the nature of the allegations. Because prior known acts are alleged, the Prior Known Acts exclusion negates Zurich's duty to defend under the AA policy.

Where ambiguities exist in a complaint, policy, or exclusionary clause, those ambiguities are resolved in favor of insurance coverage. However, if a straightforward reading of the complaint and policy, including exclusions, denies coverage, the court will apply the clear meaning of the text. The court will not engage in a strained construction or indulge a far-fetched interpretation of a policy to find coverage.

For Zurich to have a duty to defend, the court must find that (1) Child M's allegations activate the AA policy coverage for suits arising from "abusive acts" *and* that (2) the Prior Known Acts exclusion does not

---

[1] Some confusion has resulted from the use of shorthand terms. When I say "arising from" abusive acts, I mean to incorporate the broad definition of the policy exclusion: "Any claim or 'suit' *based upon, arising out of or attributable, in whole or in part, to any 'abusive act'* of which any insured, other than the insured actually committing the 'abusive act', has knowledge prior to the effective date of this Coverage Part." (ECF No. 14-5, ex. C, p. 66-67 (emphasis added)).

4

negate that coverage under the circumstances of this case. Subsection II.A outlines the well-established principles that guide the duty-to-defend analysis. Subsection II.B discusses the applicability of the AA policy to Child M's allegations. Subsection II.C addresses the Prior Known Acts exclusion to the AA policy.

### A. Duty-to-Defend Principles

The duty-to-defend analysis is guided by well-established principles:

> "[T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against." Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit. If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage. When multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated.

*Voorhees v. Preferred Mut. Ins., Co.*, 607 A.2d 1255, 1259 (N.J. 1992) (internal citations omitted).

Policy exclusions, which limit the scope of coverage provisions, are governed by the following interpretive principles:

> Exclusionary clauses are presumptively valid and are enforced if they are "specific, plain, clear, prominent, and not contrary to public policy." If the words used in an exclusionary clause are clear and unambiguous, "a court should not engage in a strained construction to support the imposition of liability."
>
> We have observed that "[i]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." As a result, exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation

of the language, courts apply the meaning that supports coverage rather than the one that limits it[.]

Nonetheless, courts must be careful not to disregard the "clear import and intent" of a policy's exclusion, and we do not suggest that "any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage[.]" Rather, courts must evaluate whether, utilizing a "fair interpretation" of the language, it is ambiguous.

*Flomerfelt v. Cardiello*, 997 A.2d 991, 996-97 (N.J. 2010) (internal citations omitted).

### B. Abusive Acts Coverage

The AA policy states that that Zurich "will pay 'loss' because of 'injury' resulting from an 'abusive act' to which this insurance applies." (ECF No. 14-5, ex. C, p. 67). The parties agree that Child M's allegations involve an injury resulting from an "abusive act." Montville posits that "Child M's allegations fall within the scope of the Abusive Act Coverage Part, which explicitly provides insurance for loss because of an injury resulting from an abusive act. It is undisputed that Child M alleges that she suffered injury at the hands of Fennes." (ECF No. 44-1, p. 9). Zurich, in response, does not really dispute the scope of the Abusive Act Coverage (but cites the Prior Known Acts exclusion, discussed below). (ECF No. 42-1, p. 12).

I agree that Child M's allegations fall within the ambit of the AA coverage. The policy defines an "abusive act" as follows:

"Abusive act" means any act or series of acts of actual or threatened abuse or molestation done to any person, including any act or series of acts of actual or threatened sexual abuse or molestation done to any person, resulting in "injury" to that person, by anyone who causes or attempts to cause the person to engage in a sexual act:

6

a. Without the consent of or by threatening the person, placing the person in fear or asserting undue influence over the person;
   b. If that person is incapable of appraising the nature of the conduct or is physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; or
   c. By engaging in or attempting to engage in lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of any person.

(ECF No. 14-5, ex. C, p. 71).

Child M clearly alleges that she was subject to "abusive acts" by Fennes at Cedar Hill Prep and suffered an injury. The complaint alleges that Fennes "sexually assaulted, inappropriately touched, and otherwise abused" Child M at Cedar Hill Prep. (ECF No. 14-4, p. 20-21). Child M's suit therefore arises from allegations of "abusive acts" that were allegedly enabled by Montville's failure to report Fennes's sexual misconduct at Montville, resulting in his being hired by Cedar Hill.

### C. Prior Known Acts Exclusion

The Prior Known Acts exclusion, however, negates Zurich's duty to defend Montville under the AA policy. The Prior Known Acts exclusion provides that there is no coverage under the AA policy for "[a]ny claim or 'suit' based upon, arising out of or attributable, in whole or in part, to any 'abusive act' of which any insured, other than the insured actually committing the 'abusive act', has knowledge prior to the effective date of this Coverage Part." (ECF No. 14-5, ex. C, p. 66-67). The "effective date" of the abusive acts coverage part, all agree, is July 1, 2011.

The complaint clearly alleges that Fennes engaged in sexual misconduct before July 1, 2011, while he worked at Montville. Montville argues, however, that these were not prior known acts for purposes of the exclusion. Child M's complaint, says Montville, "does not allege with

7

specificity that the Board had knowledge of any information which would clearly meet the definition of an 'abusive act' as used in the Abusive Act Coverage Part" prior to July 1, 2011. (ECF No. 44-1, p. 10).

This argument is unavailing. Child M's complaint alleges that Montville "was on notice of" Fennes's "inappropriate abusive and/or sexual conduct with his infant students" and "failed to report ... to the appropriate administrative agencies, local, county and state authorities as well as potential employers including Cedar Hill Prep." (ECF No. 14-4, ex. B, Count 9, ¶¶ 2-4). The complaint further alleges that Fennes, while an employee of Montville, "engaged in various acts of sexual molestation and/or child abuse against other infant students." (*Id.* Count 10, ¶ 3). It asserts that Montville "controlled the hiring, retention, supervision and cover-up on the heinous acts of molestation perpetrated by [Fennes]," and "caused [plaintiff's] exposure to [Fennes], a known pedophile and child molester ...." (*Id.* Count 11, ¶¶ 4, 6).

Montville argues that these allegations do not clearly set forth an "abusive act," as defined in the policy. Montville claims that the court has "no way of knowing what the Complaint was referencing when it stated that the Board was on notice of 'abusive and/or sexual conduct' and 'sexual molestation and/or child abuse.'" (ECF No. 44-1, p. 12). "For example, Child M might be alleging that the Board had knowledge of students sitting on Fennes' lap." (*Id.*). Montville claims that this "is plainly not what was contemplated by the Prior Known Acts Exclusion." (*Id.*).

I reject Montville's arguments.

First, Child M alleges that Montville was aware that Fennes had engaged in "sexual molestation" and "child abuse." Child M alleges that Montville knew Fennes was "a known pedophile and child molester." These allegations would not reasonably be construed to state that

Fennes had children sit on his lap in a platonic, non-sexual way. A straightforward reading of the complaint is that Montville was allegedly aware of "abusive acts" prior to the effective date of the policy. And the theory of liability is that Montville covered up such acts, permitting the abuse of Child M to occur at Cedar Hills.

Second, a comparison of the allegations about Fennes's time at Cedar Hills Prep and his time at Montville makes it fairly clear what is meant. Child M makes substantively the same allegations about Fennes regarding his time at Cedar Hill Prep and Montville. While at Cedar Hill Prep, Child M alleges, she was "sexually assaulted, inappropriately touched, and otherwise abused" by Fennes. (ECF No. 14-4, p. 20-21). Child M claims that Fennes was "a sexual predator, pedophile, and deviant." (*Id.* at 21). At Montville, Child M alleges that students were victims of Fennes's "sexual molestation" and "child abuse." These statements are sufficient to notify Montville of allegations that Fennes engaged in sexual misconduct toward children during his Montville employment.

It is true that exclusionary clauses are to be narrowly construed and that ambiguities in a complaint are resolved in favor of insurance coverage. *See Flomerfelt v. Cardiello*, 997 A.2d 991, 996-97 (N.J. 2010). Still, there must be a predicate ambiguity. *Id.* As the New Jersey Supreme Court stated in *Voorhees v. Preferred Mutual Insurance Co.*, "*[i]f the complaint is ambiguous*, doubts should be resolved in favor of the insured and thus in favor of coverage." 607 A.2d 1255, 1259 (N.J. 1992) (emphasis added); *cf. Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990) ("[T]he words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability.").

9

Where there is no ambiguity, the court need not torture straightforward language to find coverage. The AA policy, the Prior Known Acts exclusion, and the complaint are clear and unambiguous. The complaint rests on the theory that Montville knew Fennes committed abusive acts while he was a teacher at Montville. Of course, Montville contests this, but if the insured's denial of liability controlled the issue, then there might rarely if ever be a duty to defend. It is generally the nature of the *allegation* that controls the insurer's duty to defend, and here the allegation is that Montville knew about the prior acts of molestation upon which its liability is premised.

### III. CONCLUSION

Zurich does not have a duty to defend Montville against allegations that it knew of Fennes's abusive conduct at Montville before July 1, 2011, but nevertheless took steps that had the effect of facilitating Child M's molestation at Cedar Hill. Zurich's motion for summary judgment is granted and Montville's motion for summary judgment is denied.

An appropriate order accompanies this opinion. The clerk shall close the file.

Dated: August 21, 2018

**KEVIN MCNULTY**
**United States District Judge**